BOCA RATONE COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 62215.  Promulgated January 15, 1935.

*Harry J. Rudick, Esq.*, and *Bernhard Knollenberg, Esq.*, for the petitioner.

*S. B. Anderson, Esq.*, for the respondent.

OPINION.

MATTHEWS: The respondent determined a deficiency in income tax against the petitioner for the year 1929 in the amount of $3,153.38. The sole issue presented for our consideration is whether the respondent erred in determining that the petitioner realized taxable income of $26,672 in the taxable year on the repossession of certain lots of land which it had sold on the installment basis and to which it had retained legal title.

A stipulation of facts was filed by the parties, which reads as follows:

1. In years prior to 1929 the petitioners sold nine lots of land located in Inlet Subdivision, Palm Beach, Florida, for an aggregate selling price of $78,750.00. The contracts of sale provided that the petitioner should retain legal title to the lots until the purchase price was paid in full, but that the purchasers should have immediate possession. The purchasers, accordingly, entered into possession of the lots.

2. Prior to 1929 the purchasers paid to the petitioner $39,375.00 under their contracts. The cash received from the sale of each lot, in the year in which the sale was made, did not exceed one-fourth of the selling price of the lot and the petitioner elected to report, and did report, profits from the sales of all the lots in question on the installment basis.

3. On the installment basis, profits of $12,253 were reported for years prior to 1929, computed as follows:

| | |
|---|---|
| Sales price | $78,750.00 |
| Cost | 54,243.99 |
| | |
| Prospective profit | $24,506.01 |
| | |
| Proportion of Cash received to be reported as profit | 24,506.01/78,750.00 |
| Cash received | $39,375.00 |
| Profit reported | 12,253.00 |

4. In 1929 the purchasers defaulted in their obligations and negotiations were entered into which resulted in agreements executed in 1929 whereby the petitioner released the purchasers from further obligation for the unpaid installments of the purchase price and, in addition, paid them $50.00 in cash for each lot, being $450.00 in all; and the purchasers surrendered their equity in the property to the petitioner and returned possession thereof to the petitioner.

5. The aggregate value of the said nine lots so repossessed by the petitioner in 1929 was, at the time of said repossession, less than $27,122.00.

6. Petitioner's return for 1929 reported no taxable profit or deductible loss resulting from the repossession of said nine lots.

7. The respondent ruled that the petitioner realized taxable income in 1929 of $26,672.00 from the repossession of the said nine lots, representing the

excess of the total cash received from the purchasers ($39,375.00) over the sum of the profits previously reported ($12,253.00) plus the amount ($450.00) paid to the purchasers as set forth in paragraph 5 above. If the respondent's ruling is correct, judgment should be entered for the deficiency determined by him. The petitioner's position is that it realized no taxable income from said repossession. If petitioner's position is correct, there is no deficiency.

The petitioner contends that section 44 (d) of the Revenue Act of 1928, which relates to the gain or loss upon the disposition of installment obligations, is here controlling. This section provides:

If an installment obligation is satisfied at other than its face value or distributed, transmitted, sold, or otherwise disposed of, gain or loss shall result to the extent of the difference between the basis of the obligation and (1) in the case of satisfaction at other than face value or a sale or exchange— the amount realized, or (2) in case of a distribution, transmission, or disposition otherwise than by sale or exchange—the fair market value of the obligation at the time of such distribution, transmission, or disposition. The basis of the obligation shall be the excess of the face value of the obligation over an amount equal to the income which would be returnable were the obligation satisfied in full.

The obligations of the purchasers to pay the balances due on the purchase prices of the lots were installment obligations. The face value of the obligations at the time of the repossession was $39,375, since the selling price of all the lots was $78,750 and the sum of $39,375 had previously been paid. The value of the lots at the time they were repossessed was less than $27,122.

It is argued by the petitioner that the installment obligations of the purchasers of the lots in question were "satisfied at other than their face value" when the lots were repossessd by the petitioner, as vendor, under the agreements described in paragraph 4 of the stipulation. This theory is based on the premise that there was a "satisfaction" of the obligations of the purchasers when the petitioner, as vendor, repossessed the lots and released the purchasers from further obligation for the unpaid installments. It is pointed out by the petitioner that under this theory any gain to the petitioner would be the difference between the basis of the obligations and the amount realized, in accordance with the provisions of section 44(d), quoted above. The basis of the obligations, as defined in section 44(d), is the excess of the face value of the obligations over an amount equal to the income which would be returnable were the obligations satisfied in full. The income which would have been returnable if the obligations had been satisfied in full is $12,253, and when this amount is subtracted from $39,375, the face value of the obligations at the time of the repossession of the lots, we have $27,122 as the basis of the obligations. The amount realized, under the circumstances of this case, was the value of the purchasers' equity, less $450. The value of the purchasers' equity could not have exceeded

the value of the lots, which was less than $27,122, and when this amount is reduced by $450 we have $26,672 as the amount realized by the petitioner when the lots were repossessed, which latter amount is less than the basis of the obligations. Thus the petitioner contends that no gain resulted from the repossession of the lots and that the effect of such repossession was to reduce the basis of the property.

We are of the opinion that section 44 (d) does not apply. It is to be borne in mind that the petitioner still had legal title to the property and merely repossessed it after the purchasers had defaulted in their obligations. The petitioner released the purchasers from any further obligation for the unpaid installments and paid the purchasers $50 in cash for each lot, and the purchasers surrendered their equity in the property. Under these circumstances it can not be said that when the purchasers were released from further liability for the unpaid installments their obligations were satisfied at other than their face value, within the meaning of section 44 (d) of the Revenue Act of 1928.

Prior revenue acts did not contain a section equivalent to subdivision (d) of section 44, which is quoted above. The report of the Ways and Means Committee of the House and the report of the Finance Committee of the Senate with respect to the inclusion of this provision in the Revenue Act of 1928 read as follows:

### Gain or Loss upon Disposition of Installment Obligations

Subsection (d) contains new provisions of law to prevent evasion of taxes in connection with the transmission of installment obligations upon death, their distribution by way of liquidating or other dividends, or their disposition by way of gift, or in connection with similar transactions. The situations above specified ordinarily do not give rise to gain and yet at the same time it is urged that they permit the recipient to obtain a greatly increased basis in his hands for the property received, except in the case of gifts. It therefore seems desirable to clarify the matter. The installment basis accords the taxpayer the privilege of deferring the reporting at the time of the sale of the gain realized, until such time as the deferred cash payments are made. To prevent the evasion the subsection terminates the privilege of longer deferring the profit if the seller at any time transmits, distributes, or disposes of the installment obligations and compels the seller at that time to report the deferred profits. The subsection also modifies the general rule provided in subsection (a) for the ascertainment of the percentage of profit in the deferred payments, in those cases in which the obligations are satisfied at other than their face value or are sold or exchanged. The modification permits a compensating reduction in the percentage of profit in case the obligations are satisfied at less than their face value, or are sold or exchanged at less than their face value.

Whether or not the gain or loss realized under the section is recognized for tax purposes, depends upon general principles of law embodied in the income tax provisions, the exchange of installment obligations in connection with tax-free exchanges, for instance, being cared for by section 112.

Neither the language of the statute nor the comments made in the reports of the House and Senate Committees indicate that it was the purpose of the provision to treat an installment obligation as " satisfied at other than its face value " when, as in the instant case, the sale was not consummated because the purchasers had defaulted in their payments and by agreement they were released from further payments.

In the notice of deficiency the petitioner was advised that the profit had been computed in accordance with the provisions of article 353 of Regulations 74, the second paragraph of which at that time read as follows:

If for any reason the purchaser defaults in any of his payments and the vendor returning income on the installment basis repossesses the property, the entire amount received in installment payments and retained by the vendor, less the sum of the profits previously returned as income and an amount representing proper adjustment for exhaustion, wear and tear, obsolescence, amortization, and depletion of the property while in the hands of the purchaser, will be income of the vendor for the year in which the property is repossessed, and the basis of the property in the hands of the vendor will be the original basis at the time of the installment sale.

On December 23, 1932, which date is subsequent to the filing of the petition herein, article 353 of Regulations 74 and article 45 of Regulations 69 were amended by T. D. 4360, by the elimination of the second paragraph of each article, which are identical, and the substitution for the paragraph eliminated of a paragraph reading as follows:

If the vendor had retained title to the property and the purchaser defaults in any of his payments, and the vendor repossesses the property by agreement or process of law, the difference between (1) the entire amount of the payments actually received on the contract and retained by the vendor and (2) the sum of the profits previously returned as income in connection therewith and an amount representing what would have been a proper adjustment for exhaustion, wear and tear, obsolescence, amortization, and depletion of the property during the period the property was in the hands of the purchaser had the sale not been made, will constitute gain or loss, as the case may be, to the vendor for the year in which the property is repossessed, and the basis of the property in the hands of the vendor will be the original basis at the time of sale. If the vendor had previously transferred title to the purchaser, and the purchaser defaults in any of his payments and the vendor reacquires the property, such reacquisition shall be regarded as a transfer by the vendor, in exchange for the property, of such of the purchaser's obligations as are applied by the vendor to the purchase or bid price of the property. Such an exchange will be regarded as having resulted in the realization by the vendor of gain or loss, as the case may be, for the year of reacquisition, measured by the difference between the fair market value of the property reacquired and the basis in the hands of the vendor of the obligations of the purchaser which were applied by the vendor to the purchase or bid price of the property. The basis in the hands of the vendor of the obligations of the purchaser so applied will be the excess of the face value of the obligations over an amount equal

to the income which would be returnable were the obligations satisfied in full. The fair market value of the property reacquired shall be presumed to be the amount for which it is bid in by the vendor in the absence of clear and convincing proof to the contrary. If the property reacquired is subsequently sold, the basis for determining gain or loss is the fair market value of the property at the date of reacquisition.

The amendment of Regulations 69 and 74, quoted above, followed the acquiescence by the Commissioner in the decision of this Board in *Jacob M. Dickinson, Jr., et al., Executors*, 18 B. T. A. 790, where the question involved the income to be returned by the vendor in the year of reacquisition of property sold on the installment plan where title had been transferred to the purchaser. This Board held that in such a case the sale and reacquisition were separate transactions and should not be considered together in computing gain or loss. We further held that the utilization of the purchase money notes in reacquiring the property sold at a trustee's sale constituted a realization of profit under the installment method of reporting income of that proportion of the notes utilized which the total profit bore to the total contract price.

In its original form the second paragraph of article 353 of Regulations 74 applied the same rule to vendors who retained title and to vendors who transferred title in installment sales transactions. As amended the article applies the same rule with respect to the vendor who retains title to the property sold on the installment plan as was contained in the article before amendment. Hence, the petitioner's contention that the article should be considered in its original form in determining its applicability to the instant case does not help petitioner's case.

The first sentence of the second paragraph of article 353, as amended, is identical with the first sentence of the second paragraph of article 354, which relates to deferred payment sale of real property not on the installment plan.

In the instant case the petitioner never transferred title to the property, only possession. It now has title and possession of the property and $26,672 on which tax has not been paid. At the time of receipt it was treated, for tax purposes, as a return of capital and had the transaction gone through to completion, there would have been a full return of the capital invested in the property sold. In the taxable year the purchasers defaulted and were released from payments on the property and gave up possession. Thereupon the amounts previously received became clear gain to petitioner and not a return of capital. The determination of the respondent is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

TURNER, dissenting: I am unable to agree that this case on its facts does not come within the meaning of section 44 (d) of the Revenue Act of 1928. By the provisions of that section there are only two conditions prerequisite to its application in cases such as that before us. The obligations dealt with must be installment obligations and they must have been satisfied at other than their face value. In my opinion the parties have stipulated that these conditions have been met.

Neither party questions the fact that the obligations of the purchasers in the instant case were installment obligations, and the majority opinion finds as a fact that they were. The question, then, is whether these obligations were " satisfied at other than " their " face value." On this point the stipulation reads as follows:

4. In 1929 the purchasers defaulted in their obligations and negotiations were entered into which resulted in agreements executed in 1929 whereby the petitioner released the purchasers from further obligation for the unpaid installments of the purchase price, and, in addition, paid them $50.00 in cash for each lot, being $450 in all; and the purchasers surrendered their equity in the property to the petitioner and returned possession thereof to the petitioner.

5. The aggregate value of the said nine lots so repossessed by the petitioner in 1929 was, at the time of said repossession, less than $27,122.00.

In my judgment these stipulated facts clearly show satisfaction of the purchasers' obligations by an executed agreement of accord. *Boffinger* v. *Tuyes*, 120 U. S. 198; *Missouri-American Electric Co.* v. *Hamilton Brown Shoe Co.*, 165 Fed. 283; *Buford* v. *Inge Construction Co.*, 279 S. W. (Tex.) 513; *Davis* v. *Davis*, 229 Pac. (Okla.) 479; *Chapman* v. *Adams*, 219 S. W. (Mo.) 132; *Glucksman* v. *Board of Education of City of New York*, 164 N. Y. S. 351. The purchasers defaulted on obligations to pay the further sum of $39,-375 and a settlement was negotiated, the net result of which was that the purchasers satisfied their obligations and received $450 in cash, in return for possession of the property and surrender of their equity therein. By the stipulation it was agreed that the entire value of the property at that time was less than $27,122, thereby showing that the obligations were satisfied at other than their face value and definitely bringing this case within the provisions of section 44 (d).

The majority opinion, it seems to me, loses itself in an effort to distinguish between a sale of property where title passes and a mortgage is given as security for the purchasers' obligations and a sale where bare legal title is retained as such security. Section 44 (d) of the statute makes no such distinction, but applies to installment obligations arising from sales of either type and, according to my view, contains nothing which would justify the distinction which the majority opinion attempts to draw.

For the reasons stated I respectfully dissent.

SMITH, TRAMMELL, ARUNDELL, McMAHON, and LEECH agree with this dissent.